JAMES RICHARD FANCHER, SR. AND BETTY
CARBAUGH FANCHER, Appellees, v. JAMES
WILLIAM MANN. Appellant. No. 130.—432 S.W.(2d)
63.

Eastern Section. March 4, 1968.

Certiorari Denied by Supreme Court October 7, 1968.

472

Shockey, Wolfe & Powers, Chattanooga, for appellant.

Williams, Grant & Clements, Chattanooga, for appellees.

PARROTT, J. This is an appeal from an adoption decree whereby the two minor sons of James W. Mann were awarded to petitioner, Dr. James R. Fancher, Sr., their stepfather. The central issue presented by the appeal is whether or not the children have been abandoned by their natural father.

Petitioner, Dr. James R. Fancher, Sr., is now married to the former Betty Carbaugh Mann, the children's mother who joins in the petition for the purpose of giving her consent. In the petition it is alleged that James Mann has abandoned his sons, James Filmer, age 16, and Harry

Carbaugh, age 14. Mr. Mann filed an answer and cross-petition denying he has abandoned the children and protests the proposed adoption. The cross-petition seeks more liberal visitation privileges with the children.

The cause was heard by the chancellor on oral testimony. From his finding the father had abandoned the children and entering a decree of adoption on behalf of petitioner, James Mann has appealed insisting the evidence preponderates against the finding of abandonment and the decree.

On January 7, 1947, James W. Mann and Betty Carbaugh were married. This marriage terminated by Mrs. Mann's obtaining a divorce on November 24, 1959. The only children of the marriage which are the subject of this proceeding were awarded to Mrs. Mann. The divorce decree, which is made a part of the record, provides, inter alia, the father shall pay $250.00 a month for support of the children. He is granted visitation privileges which are subject to rather strict limitations, such as giving 48 hours notice to the mother prior to any visit and then only under certain conditions.

Within a month after the divorce, Mr. Mann married his present wife, a Mrs. Stephenson, who had previously been divorced and was the mother of four young children. After this marriage they commenced living in Atlanta where they still reside with the present Mrs. Mann's children living in the household with them. At the time of the hearing there had been no children born of this marriage.

Betty Carbaugh Mann has also remarried. She and the petitioner, Dr. James Richard Fancher, Sr., a widower were married on June 3, 1962. At the time of the mar-

riage Dr. Fancher had three grown children by his previous marriage who are residing outside the household and pursuing their own careers elsewhere.

■ It might be well to point out that unless it is found the father has abandoned these children, we never reach the question of adoption. In other words, since the children are under 18 years of age and in the absence of consent of both parents, if abandonment is not shown, the court would not have jurisdiction to consider if it is in the best interest of the children to be adopted. See Young v. Smith 191 Tenn. 25, 231 S.W.2d 365.

In the chancellor's oral opinion he found that Mr. Mann had not complied with the support requirement of the divorce decree. The evidence certainly preponderates in favor of this finding.

It is shown that he paid for the support of his children in 1960, $3,000; in 1961, $1200; in 1962, $1200; in 1963, $1650; in 1964, $1950; in 1965, $300, and no payments have been made since March of 1965.

It is also shown that on March 18, 1963, Mr. Mann and his former wife entered into a written agreement modifying the decree whereby the monthly payments would be reduced to $150.00 and Mr. Mann would be relieved of paying any arrearage under the former decree. In the agreement it is recited that the reason for the modification is because there has been a change in Mr. Mann's financial condition.

In his testimony he says he has suffered further financial losses since the 1963 agreement and is presently burdened with an indebtedness of over $100,000.

In 1965 his financial condition became so depressed that he was on the verge of bankruptcy. At this time he contacted Mr. Carbaugh, Mrs. Fancher's father, asking to be temporarily relieved of child support payments. Mr. Carbaugh replied by letter stating he did not want to work a hardship on him but hoped he would be able to resume the payments in the near future. It appears that Mr. Carbaugh has always had a very keen interest in his grandsons, for which he must be commended. Most of the arrangements about visitations and support were always taken up with Mr. Carbaugh. His letter to Mr. Mann in late 1965 discusses both matters of support and visitations of the children.

The prospects and hopes of Mr. Mann's financial condition improving in the future do not appear to be very bright. In spite of his large indebtedness he has continued to live on a rather high plane, residing in $40,000 to $50,000 houses, owning three cars and maintaining full-time maid service.

It is apparent from what the chancellor said in his opinion that he placed much emphasis and was greatly influenced by the fact that Mr. Mann had failed to provide support for his children. At one point the chancellor said: "The Court is satisfied that Mr. Mann has the natural paternal affection for his sons." He went on to say that Mr. Mann's failure to support

"* * * rather indicates to the Court a disposition to take other matters more seriously than the matter of providing support for his children.

"This, in the opinion of the Court, constitutes technical abandonment."

From what was said we believe the chancellor placed too much weight on Mr. Mann's failure to support in determining the issue.

While it may be true, as the chancellor found, that Mr. Mann has violated both the divorce decree and his parental obligation to support his children, nonsupport alone is not sufficient in all cases to establish abandonment so as to say that it is unnecessary for a parent to give consent to the adoption of children by another person. Certainly nonsupport, along with many other factors, is to be considered but one of the elements always necessary is intent on the part of the parent.

In Guardianship of Snowball, 156 Cal. 240, 104 P. 444, it was said:

"In order to constitute an abandonment, 'there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relationship and throw off all obligations growing out of the same.' "

When considering the issue of abandonment in relation to an adoption proceeding, it is incumbent upon the petitioner to prove the issue and to show the parent who is resisting the adoption has abandoned the child within the meaning of the statute dispensing with the necessity of consent of the parent. To do this we do not necessarily look to the protestations of affections and intentions expressed by the natural parent but must look at the past course of conduct. The evidence must clearly show a conscious disregard or indifference to the parental obligations for a court to forfeit the parental rights and obligations.

The question of abandonment of children within the purview of the adoption statutes is not a new question for our courts. In Ex parte Wolfenden, 49 Tenn.App. 1, 349 S.W.2d 713, the Court quoted with approval from 1, Am.Jur., Adoption of Children, sec. 42, the following definition of abandonment:

" 'Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. It does not follow that the purpose may not be repented of, and, in proper cases all parental rights again acquired. * * * but when abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child.' "

In the later case of Ex parte Wolfenden, 48 Tenn.App. 433, 348 S.W.2d 751, the Middle Section of this Court had before it a case which is very similar to the present case. As to the degree of proof necessary to find abandonment, the Court said:

"Abandonment, to warrant a Court in allowing an adoption over the protest of the natural parent, must be unequivocal. In re Norris, 157 Misc. 333, 283 N.Y.S. 513.

"Evidence of such abandonment must be clear and convincing. In re Adoption of Strauser, 65 Wyo. 98, 196 P.2d 862; Strode v. Silverman, Tex.Civ.App., 209 S.W.2d 415; In Matter of Bistany, 239 N.Y. 19, 24, 145 N.E. 70.

"Abandonment by natural parents may be found only when, being given benefit of every controverted fact, such inference follows from the evidence as a matter

of law. People ex rel. Cocuzza v. Cobb, 196 Misc. 961, 94 N.Y.S.2d 616; Caruso v. Caruso, 175 Misc. 290, 23 N.Y.S. 2d 239.''

In 35 A.L.R.2d 662 is found a lengthy annotation with numerous cases cited from many jurisdictions dealing with the issue of abandonment or desertion of a child by its parent or parents within the purview of the adoption statute. Within this annotation it is stated the overwhelming weight of authorities requires the proof to show that there has been an absolute, complete and intentional relinquishment of all parental control and interest of the child before the courts will sever all parental relationship and say consent is unnecessary to allow an adoption.

Mindful of what has been aforesaid and the above principles and rules, let us now consider the facts pertaining to Mr. Mann's course of conduct toward his children since the divorce. In the first few years after the divorce he visited the children fairly regularly, some eight or ten times a year. By his testimony and the testimony of the boys, as the years passed, these visits began to gradually decrease. At the time of the hearing he had not seen the children since February 1966. One of the reasons he gave for the decrease in visits was that he had been working night and day trying to save his business and that under the terms of the divorce decree it was practically impossible for him to make the necessary arrangements to be with the children. He pointed out that in the past six or seven years he had been refused visitation privileges on fifteen or twenty times, usually because of inconvenience.

One of the reasons given for his not seeing the boys in over a year results from this petition of adoption. According to the testimony of Dr. Fancher, his wife and Mr. Carbaugh took the position that after the petition of adoption was filed on May 12, 1966, they were justified in refusing Mr. Mann visits because of "technical" reasons. We cannot give Mr. Mann much credit for abiding by this suggestion because the filing of the petition had absolutely nothing to do with his visitation privileges.

Although Mr. Mann has not carried on a regular correspondence with his children, it is to his credit that he has remembered their birthdays and Christmas by sending presents. It is understandable that during their younger years it would not have been very practical to correspond with the boys but at their present age we see no reason why some correspondence should not be had.

Under the facts here it might be said that Mr. Mann's failure to visit his children more often than he did might be reasonably attributed to the strictness of the divorce decree and the consequent attitude of the mother in refusing visitations on many occasions on the ground of inconvenience.

Even taking into consideration the limitations of the divorce decree and the attitude of the mother, we do not think Mr. Mann has shown the usual and proper concern for his children a parent should. Nevertheless, after a careful study of all the proof, we cannot say the evidence here is so clear, convincing and unequivocal to show that Mr. Mann "evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child[ren]." In other words, the evidence here, though strong, does not meet the test set forth in Ex

parte Wolfenden, supra, which requires a clear, convincing and unequivocal showing of abandonment.

Thus it results the chancellor's finding of abandonment is reversed, the decree of adoption vacated with the costs incident to this appeal adjudged equally against the petitioner, Dr. Fancher, and James Mann, and his sureties.

McAmis, P. J., and Cooper, J., concur.