# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| IN RE: BRITTANY SWANSON, A Minor Under 18, | ) ) ) | Tipton County Circuit Court No. 4532 |
| TENNESSEE BAPTIST CHILDREN'S HOMES, INC., | ) ) ) | |
| Petitioner/Appellant | ) ) | |
| VS. | ) ) | C.A. No. 02A01-9709-CV-00233 |
| HARRY SWANSON, | ) ) | |
| Respondent/Appellee. | ) ) | |

FILED

May 14, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

_____

From the Circuit Court of Tipton County at Covington.
**Honorable Joseph H. Walker, Judge**

**H. William Scott, III**, Brentwood, Tennessee
**Frank C. Ingraham**, Nashville, Tennessee
Attorney for Petitioner/Appellant.

**James H. Bradley**, Covington, Tennessee
Attorney for Respondent/Appellee.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

This is an appeal by the Tennessee Baptist Children's Home (TBCH) from a judgment entered by the trial court denying its petition to terminate the parental rights of Harry Lee Swanson as to his daughter Brittany Swanson, born June 10, 1990. The record establishes that Brittany was removed from the custody of her biological parents and placed in the legal custody of the Department of Human Services (DHS) on May 4, 1993 after a determination of dependency and neglect was made by the juvenile court. Since June 30, 1993, Brittany has resided in a foster care home through placement by TBCH. In December 1994, the foster care goal was changed from reunification with the parents to adoption and in June 1995, TBCH filed a petition for legal custody of the child. DHS transferred legal custody of Brittany to TBCH by court order entered August 1, 1995.

On January 25, 1996, TBCH filed a petition to declare Brittany abandoned by her parents, as such is defined under T.C.A. § 36-1-102(1), and to terminate their parental rights.[1] The petition alleged that both parents resided in Tupelo, Mississippi, albeit in separate residences. It was alleged that upon consulting the putative father registry, no claim existed as to the paternity of the child and that no other claim or potential claim to the paternity of the child existed. TBCH sought termination on the statutory ground that the parents had willfully failed to visit or had willfully failed to pay support or make reasonable payments toward the child's support for a period of four (4) consecutive months immediately preceding the filing of its petition. TBCH asserted that it was therefore in the best interest of Brittany that the parental rights of her natural parents be terminated.

After a hearing on June 6, 1996, the juvenile court entered an order terminating the parental rights of both parents on the ground of abandonment after both failed to make an appearance in the juvenile court or answer the petition. The court therefore held that the allegations in the petition were to be "taken as confessed as to Brigitte Lee Stanford and Harry Lee Swanson . . . ."[2] Mr. Swanson appealed from this decision to the circuit court.[3] The circuit court entered an order

---

[1]The petition identified the natural mother of the child as Brigitte Lee Stanford.

[2]The order states that service of process of the petition was attempted on both parents through certified mail at each of their last known addresses and ultimately accomplished through publication pursuant to court order.

[3]The child's natural mother did not appeal from the juvenile court's decision.

setting aside the "default" judgment entered against Mr. Swanson and held that he be given an opportunity to contest the allegations of abandonment. The cause was remanded for further hearing.

A hearing on the merits was conducted in the juvenile court on October 17, 1996 resulting in an order by the court terminating Mr. Swanson's parental rights on the ground of abandonment "as defined in T.C.A. § 36-1-102(1)(A)." The court held that the ground of abandonment had been established by clear and convincing evidence and that it was in the best interest of the child that Swanson's parental rights be terminated. Swanson again appealed from the juvenile court's decision. The circuit court conducted a hearing on April 25, 1997 and thereafter entered an order reversing the decision of the juvenile court and denying the petition to terminate Swanson's parental rights. The trial court's factual findings include the following:

> The father and Brigitte Swanson separated in the summer of 1991 in Tipton County, Tennessee. They had been living with Ms. Swanson's father.

> Mr. Swanson moved to Mississippi for a short while, then to Missouri, where he has lived since December, 1991. Ms. Swanson moved from Tipton County to various places in Shelby County, and Mississippi, and did not reside any place very long.

> Mr. Swanson tried to maintain contact with his wife through her father, but was not successful.

> . . . . In September, 1992, approximately a year after she and Mr. Swanson separated, [Brigitte Swanson] applied for a marriage license in Mississippi, stating under oath that her marriage to Mr. Swanson had ended in his death. That was not correct.

> Mr. Fortenberry, the DHS case worker, testified that the records with DHS reflect that at one point in time no attempt was made to notify Mr. Swanson, because Ms. Swanson asserted that Mr. Swanson was deceased.

> Mr. Swanson testified that he had made numerous attempts to try to see his daughter, Brittany, but was denied visitation by Ms. Swanson. That he had contacted Ms. Swanson's father, Mr. Ellingburg, who lives in Tipton County, trying to find the location of Ms. Swanson and Brittany. Mr. Ellingburg reported that he never knew their location.

> At some point Mr. Swanson learned Brigitte had remarried, and he came to try to see if she had obtained a divorce from him. He was told by third parties that she claimed he was deceased. In January, 1995, he filed for divorce against her in Missouri. He tried to obtain custody in that divorce proceeding in Missouri, but was told that since the child was not in the State of Missouri that the Court could not award custody to one party or the other.

After he married his present wife, they traveled to Tennessee on occasions, as they could financially afford to do so, in an attempt to find his ex-wife and child.

Brigitte Swanson died in October, 1996.

. . . .

Mr. Swanson learned of the proceedings to terminate his parental rights when someone informed him they had read the notice in the newspaper in Tipton County, and he traveled to Tennessee but learned that the proceeding had been taken by default. He immediately appealed, and the matter was sent back for hearing, and he is appealing from that decision.

Mr. Swanson testified that he wants to support his child, that he had children by a prior marriage, that he has a child by his present marriage, and he wants his child to live with him.

Based upon these findings, the court held:

[T]he proof fails to show by clear and convincing evidence that Mr. Swanson willfully failed to support his child, Brittany. Mr. Swanson attempted to locate his child, and the mother, but was unable to do so. He was a man with limited financial means, and as he was financially able would travel to Mississippi, and Tennessee, attempting to locate his child and her mother. He was not given aid by his wife's father, and in fact, his wife was telling people that he was deceased. He did not voluntarily relinquish custody of the child, and there has been no showing that he is an unfit parent. In fact, he is raising his present wife's children, and has another child with his present wife. There was no showing that he had a bad home environment, and no showing of bad conduct on his behalf prior to his wife leaving with the child.

While the petition alleges Mr. Swanson did not do everything he should have done to locate his child, the Court can not find that he willfully abandoned his child under all the circumstances of this case.

The court additionally held that the case be remanded to the juvenile court "for the placement of the child with the natural father." It is from this decision that TBCH now appeals to this Court.[4]

TBCH presents the following issues for our review:

1. Did the trial court err in finding no abandonment by using cases and definitions under prior law that had been legislatively

_____

[4]The record indicates that TBCH filed a motion for a partial stay of the judgment in respect to the trial court's order that the child be returned to her natural father pending the outcome of this appeal.

overruled by the current statute defining abandonment, T.C.A. § 36-1-102?

    2. Did the court err in ordering the minor child who was in foster care by court order returned to her father when he had made no such request?

As to the first issue, it is suggested that the trial court, in making its decision of no abandonment, relied upon case law no longer applicable to termination cases on the ground of abandonment due to the legislature's enactment of T.C.A. § 36-1-102 which, in effect, "legislatively overruled" the prior case law. The judgment of the trial court expressly indicates a reliance on various case law, particularly the court of appeals decision of *O'Daniel v. Messier*, 905 S.W.2d 182 (Tenn. App. 1995), from which the court quoted extensively.[5] *O'Daniel* was decided in 1995 with

---

[5]The trial court quoted from *O'Daniel*, in part, as follows:

The Tennessee Supreme Court has articulated the standards for determining abandonment in adoption cases as follows:

> Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child . . . .

*In re Adoption of Bowling*, 631 S.W.2d at 389 (*quoting Ex parte Wolfenden*, 49 Tenn.App. at 5, 349 S.W.2d at 714). *See also In re Adoption of Female Child* (*Bond v. McKenzie*), 896 S.W.2d at 547. This court has held that the evidence of abandonment must show a "conscious disregard or indifference" for parental obligations and must demonstrate that there has been

> an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relationship and throw off all obligations growing out of the same.

*Fancher v. Mann*, 58 Tenn.App. 471, 476, 432 S.W.2d 63, 65 (1968). Accordingly, we conclude that the conduct must amount to "an absolute, complete and intentional relinquishment of all parental control and interest . . . [in] the child" in order to constitute abandonment. *Fancher v. Mann*, 58 Tenn. App. At 478, 432 S.W.2d at 66.

The courts have consistently used the standards in *Ex Parte Wolfenden* and *Fancher v. Mann* to determine whether a parent has abandoned his or her child. These decisions demonstrate that the courts consider the following matters when determining whether an abandonment has occurred: (1) the parent's ability to support the child; (2) the amount of support the parent has provided to the child; (3) the extent and nature of the contact between the parent and the child; (4) the frequency of gifts on special occasions; (5) whether the parent voluntarily relinquished custody of the child; (6) the length of time the child has been separated from the parent; and (7) the home environment and conduct of the parent prior to the removal of the child. . . . No single factor is controlling. Abandonment inquiries are heavily fact-oriented, so the courts may consider any fact that assists in deciding whether the parent's conduct demonstrates a conscious or willful disregard of all of his or her parental duties.

the court noting that at that time, "Tennessee lack[ed] uniform standards for determining whether a parent has abandoned his or her child." ***O'Daniel***, 905 S.W.2d at 186.

Appellant contends that the trial court was bound by the current provisions of § 36-1-102, which became effective on January 1, 1996 and which define "abandonment" as follows:

> As used in this part, unless the context otherwise requires:
> (1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:
> > (iii) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;
> > . . . .
> > (B) For purposes of this subdivision (1), "token support" means that the support, under the circumstances of the individual case, is insignificant given the parent's means;
> > (C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;
> > (D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;
> > (E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

Section 36-1-102(1)(G) further provides:

> "Abandonment" does not have any other definition except that which is set forth herein, it being the intent of the general assembly to establish the only grounds for abandonment by statutory definition. Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made. Decisions of any court to the contrary are hereby legislatively overruled;

***O'Daniel v. Messier***, 905 S.W.2d at 187 (some citations omitted).

The appellee asserts that the trial court's decision is correct and that the case law cited was merely "for guidance in determining whether [TBCH] met its burden of proving by clear and convincing evidence that [Mr. Swanson] either willfully failed to visit or willfully failed to support his child."

T.C.A. § 36-1-103(b) states that "[a]doptions and terminations of parental rights pending on January 1, 1996, . . . shall be governed by prior existing law." The petition in the instant matter was filed on January 25, 1996 and we believe clearly falls within the provisions of the current statute and the statutory definition of abandonment. Under the plain language of the statute, a natural parent's willful failure to support or make reasonable payments toward the support of their child for a four month period immediately preceding the filing of the petition to terminate is an abandonment of that child and a ground for termination of that person's parental rights.[6] The statute proceeds to define a "willful" failure to support as where no monetary support is paid for a consecutive four month period.

The legislature makes clear under § 36-1-102(G) that abandonment has no definition other than that set forth in the statute. It is undisputed that Mr. Swanson has made no effort toward the support of his child for the entire period she has been in either TBCH's custody or that of DHS, a period of several years. Clearly, this failure falls within the definition of the statute.

We are cognizant of the unusual circumstances presented here. Most significantly, the undisputed testimony that Ms. Swanson falsely informed various agencies that Mr. Swanson was deceased; that during the years after Mr. and Mrs. Swanson separated, she relocated with the child several times; and that it appears that efforts were not made to contact Mr. Swanson during the initial proceeding to determine the child dependent and neglected. We, nonetheless, are bound to follow the plain language of the statute as prescribed by the legislature. Although the end result here may seem harsh, we believe it within the legislature's domain to carve out exceptions to the foregoing definition and that it is not within the realm of this Court to make such determination or to redefine the ground of abandonment when the legislature has clearly spoken on the issue. We therefore find

_____

[6]T.C.A. § 36-1-113(g)(1) states: "[t]ermination of parental or guardianship rights may be based upon any of the following grounds: (1) [a]bandonment by the parent or guardian, as defined in § 36-1-102, has occurred;"

that the trial court erred in denying TBCH's petition to terminate the parental rights of Mr. Swanson as to his daughter Brittany.

The second issue concerns whether the trial court erred in remanding the case to the juvenile court to enter an order returning custody of the child to Mr. Swanson. As we find merit in the first issue presented, we likewise conclude that the trial court erred in remanding this cause for such action. In any event, we note that the record before us does not include a petition for custody filed on Mr. Swanson's behalf.

It results that the judgment of the trial court is reversed and this cause remanded thereto for further necessary proceedings. Costs are assessed against the appellee, for which execution may issue if necessary.

_____

FARMER, J.

_____

HIGHERS, J. (Concurs)


_____

LILLARD, J. (Concurs)