IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2000 Session

# IN RE:  THE ADOPTION OF A MALE CHILD,  DERRICK DOUGLAS DUNCAN, By RONALD EUGENE TAYLOR, ET UX v. LEO DUNCAN, JR.

**A Direct Appeal from the Chancery Court Smith County**
**No.  A-98-004    The Honorable C. K. Smith, Chancellor**

_____

**No. M1999-01713-COA-R3-CV - Filed July 28, 2000**

_____

This appeal involves a petition by prospective adoptive parents for termination of parental rights, temporary guardianship, and for adoption of the minor child of the defendant father.  In a non-jury trial, at the conclusion of petitioner's proof, the trial court found that they had failed to prove by clear and convincing evidence that the defendant father had abandoned the child and dismissed the petition.  The prospective adoptive parents have appealed.

**Tenn.R.App.P. 3, Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E.HIGHERS, J. and DAVID R FARMER, J., joined.

David Bass, Carthage, For Appellants

James B. Dance, Carthage, For Appellee

## OPINION

Plaintiffs, Ronald Eugene Taylor and wife Rita Cheryl Taylor (hereinafter "Taylors"), appeal the judgment of the trial court dismissing their petition to terminate the parental rights of defendant, Leo Duncan, Jr. (hereinafter "Father"), father of Derrick Douglas Duncan (hereinafter "the child").

On July 10, 1998, Taylors filed a "Petition for Termination of Parental Rights, Temporary Guardianship and Adoption of a Child" against defendant, Leo Duncan, Jr., the biological father of the child.  The petition alleges that the child was born April 28, 1994 in Smith County, Tennessee to defendant Leo Duncan, Jr., and his wife, Connie Sue McMillan Duncan (hereinafter "Mother").  The petition avers that Father is currently incarcerated at the South Central Correctional Facility in Clifton, Tennessee.  The petition further avers that on April 24, 1998, Mother surrendered the child for adoption before Chancellor Vernon Neal, Chancellor of the Putnam County Chancery Court, and her parental rights were terminated on April 24, 1998, pursuant to statute.  The petition alleges that

Father has abandoned the child as provided in T.C.A. § 36-1-102 and § 36-1-113 (1)(7)(B)(i). Taylors aver that the termination of parental rights is in the best interest of the minor child and that they obtained physical custody of the child approximately March 1, 1998, from Mother and have maintained physical custody and control since that time. The petition seeks the adoption of the child.

Father's answer to the petition filed on September 16, 1998, after a motion for default was filed by Taylors, denies the material allegations of the petition and avers that he has not abandoned the child, and that the child is not a suitable child for adoption.

The case was heard without a jury on July 15, 1998. Taylors testified that the child had been with them for about 15 months and during that time Father had not tried to contact the child nor had he sent any money for the child's support. They testified concerning their desire to have the child as their own and their ability financially and physically to take care of the child.

The Reverend Steve Warren, the Taylors' pastor, testified concerning their character, their activities with the child, and their ability to take care of the child. Jane Forcum testified that she is a case worker with the Midcumberland Children's Services. She had done a home study of the Taylors' home and found that they were suitable as adoptive parents. Angie Bass, social counselor with the Department of Human Services, testified that Mother was removed from the home of Father's parents where she, Father and the child were living. At that time, Mother was mentally ill and in need of medical attention. Bass also testified that the grandmother of the child, Father's mother, had been the primary care provider for the child while the child resided in her home. At the time of the trial, Janice Duncan, Father's mother, had died. Ms. Bass also testified that Mr. and Mrs. Duncan, Jr., lived with Duncan, Jr.'s mother and father from shortly after the child's birth, and at some point in time when the child was approximately 18 months to 2 years of age, she was called to the home and found the child's mother in a comatose state. She and a deputy sheriff removed Mother from the home, and the child was left in the home to be cared for by the primary care giver, Leo Duncan, Jr.'s mother. At some point, approximately 18 months after that, the child's mother was allowed to take the child from the Duncan, Sr. home to reside with her until she surrendered the child for adoption.

Father was called to testify by Taylors. He testified that he was incarcerated on April 10, 1996, and is due for release in July, 1999, shortly after the trial. He explained that his criminal convictions were burglary and introduction of a controlled substance into a penal institution. He testified that prior to his incarceration in 1996, he had made about $700.00. Prior to that he had rather sporadic employment in 1994 and 1995. Father testified that he tried to work when he could and that while he was living in the home with his parents and the child, he helped support and care for the child. When Father was incarcerated in the county jail, his parents brought the child to the jail for visitation. At the time the child was removed from his mother's home, Father had been transferred to the state prison. Father testified that his mother told him that the child had been removed from the home, and he believed that the child was in the custody of the Department of Human Services. Father further testified that when he received the service of process in July of 1998, he contacted his mother and asked her to call his attorney to protect his rights. He was in

-2-

contact with his attorney through his mother. Father introduced into evidence a letter he wrote to the attorney from prison which states:

> Dear Mr. Dance:
>
> This is Leo Duncan, Jr., Derrick Douglas Duncan's dad. I would like for you to be my lawyer to defend my rights as a father and put a stop to the adoption of my son. I do not want this to happen. Derrick is the only son I have and I love him with all of my heart, so I want you to stop this adoption of my son and send him home with his grandma and grandpa where he belongs. I have just got seven months left and I will be home.

Taylors' proof closed with Father's testimony, and Father made a motion to dismiss which was granted by the trial court. In so ruling, the court stated:

> [Y]ou have failed to carry the burden of proof here that there has been any type of abandonment whatsoever under any of those statues that you cited, under any section.
>
> I don't think – you haven't convinced the court that the father was engaged in conduct prior to incarceration which exhibit[s] a wanton disregard for the welfare of the child.

The Taylors have appealed and present two issues for review, as stated in their brief:

> I. Whether the trial court was in error when, at the close of the Taylors' proof, it granted Duncan's motion to dismiss on the basis that the Taylors failed to establish abandonment by clear and convincing evidence?
>
> II. Whether the Taylors are entitled to a new trial due to the fact that the portion of the statute on which this cause was tried has since been declared unconstitutional, and therefore the prior law should be applied to the instant set of facts?

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Tenn R. App. P. 13(d).

A parent has a fundamental right to the care, custody, and control of their children. ***Stanley v. Illinois,*** 405 U.S. 645, 92 S.Ct. 1208, 31 L. Ed. 2d 551 (1972). However, this parental right is not

absolute, and can be terminated where there is clear and convincing evidence justifying such termination under the applicable statute. ***Santosky v. Kramer***, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed. 2d 599 (1982). The Tennessee Supreme Court has held that the Tennessee Constitution protects a parental right to privacy to care for one's children absent unwarranted intervention by the state unless there is a substantial danger of harm to the child. ***In Re: Swanson,*** 2 S.W. 3d 180, 187 (citing ***Hawk v. Hawk,*** 855 S.W.2d 573, 579 (Tenn. 1993)). "It is therefore beyond question that before a parent's rights can be terminated, there must be a showing that the parent is unfit or that substantial harm to the child will result if parental rights are not terminated." ***Id.*** at 187-88

Pursuant to T.C.A. § 36-1-113 (c)(1)(2) (Supp. 1999), termination of parental rights must be based on:

> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

> (2) That termination of the parent's or guardian's rights is in the best interest of the child.

Therefore, a finding by clear and convincing evidence that grounds for termination exist is the threshold issue that must be addressed; and the issue of the best interest of the child is not reached unless grounds for termination are first established.

As to the first issue, Taylors assert that the trial court erred in finding that the Taylors failed to establish abandonment by clear and convincing evidence. They argue that the proof shows there was only token support by Father inasmuch as he made only $700.00 in the few months in 1996 before he was in prison and he did not have enough money to provide more than token support. They further argue that there was no proof in the record that Father couldn't work full time or be more gainfully employed. They also assert that the proof shows that there was only token care by Father because all of the proof showed that the primary care giver, except for the time that the child was with his birth mother, was by Father's mother, Janice Duncan. Finally, Taylors assert that his conduct prior to incarceration exhibited a wanton disregard for the welfare of the child.

Father testified that during the time prior to his incarceration, he helped with caring for the child and helped pay support for the child as well as he was able with the money that he had. He further testified that his incarceration in April of 1996 was for a DUI offense that violated probation for a conviction of burglary which occurred prior to the birth of the child. T.C.A. § 36-1-102 provides in pertinent part:

> **36-1-102. Definitions. -** As used in this part, unless the context otherwise requires:

(1)(A)(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration which exhibits a wanton disregarding for the welfare of the child.

(B) For purposes of this subdivision (1), "token support" means that the support, under the circumstances of the individual case, is insignificant given the parent's means;

(C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;

(D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

\*          \*          \*

Subsequent to the decision in this case, the Supreme Court on October 4, 1999, held that the definition of "willfully failed to support" and "willfully failed to make reasonable payments toward such child's support" are unconstitutional and stated that the definition that was in effect under the prior law should be applied. The definition under the prior law of both failure to visit and failure to support contain an element of intent. ***In Re: Swanson***, 2 S.W.3d 180 (Tenn. 1999).

In the instant case, the trial court found that under the above definition of "willfully failed to support" and "willfully failed to visit," Father had not abandoned the child. This finding is based primarily on the testimony of Father. In this nonjury case, the trial judge as the trier of fact had the opportunity to observe the manner and demeanor of the witnesses, including Father, as they testified

from the witness stand. The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***Town of Alamo v. Forcum-James Co.***, 205 Tenn. 478, 327 S.W.2d 47 (1959); ***Sisk v. Valley Forge Ins. Co.***, 640 S.W.2d 844 (Tenn. Ct. App. 1982). The trial court apparently determined from Father's testimony that he did provide monetary support within his means during the period of time prior to incarceration.

***In Wilson v. McDonald***, 1996 WL 307497 No. 03A01-9509-CV-00332 (Tenn. Ct. App. June 10, 1996), the trial court was affirmed in terminating the parental rights of a mother who had been incarcerated at the time of the birth of her child. In reviewing Tennessee case law with regard to the test for abandonment, the Court stated:

> When an adoption petition alleges that a biological parent has abandoned his or her child, the test of abandonment (FN omitted) is whether "any conduct on the part of the parent ... evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child" sought to be adopted. ***Wolfenden,*** 349 S.W.2d 713, 714 (Tenn. Ct. App.1959). ***See also Adoption of Bowling v. Bowling***, 631 S.W.2d 386, 389 (Tenn.1982); ***Koivu v. Irwin,*** 721 S.W.2d 803, 807 (Tenn. Ct. App.1986); ***Fancher v. Mann,*** 432 S.W.2d 63, 66 (Tenn. Ct. App.1968). "To [show abandonment] we do not necessarily look to the protestations of affections and intentions expressed by the natural parent but must look at the past course of conduct." ***Fancher,*** 432 S.W.2d at 65. ***See also Koivu,*** 721 S.W.2d at 807. In order to warrant the forfeiture of parental rights and obligations, a court must find" a conscious disregard or indifference to the parental obligations." ***Id.***
>
> An abandonment must be shown by clear and convincing evidence. ***Id; Fancher***, 432 S.W.2d at 66; ***O'Daniel v. Messier,*** 905 S.W.2d 182, 187 (Tenn. Ct. App.1995). The concept of clear and convincing evidence is examined in the ***O'Daniel*** case:
>
>> Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. [citation omitted] It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established. [citation omitted].
>
> ***Id.*** at 188. There are a number of matters considered by courts in deciding whether an abandonment has occurred:

> ... the courts consider the following matters when determining whether an abandonment has occurred: (1) the parent's ability to support the child; (2) the amount of support the parent has provided to the child; (3) the extent and nature of the contact between the parent and the child; (4) the frequency of gifts on special occasions; (5) whether the parent voluntarily relinquished custody of the child; (6) the length of time the child has been separated from the parent; and (7) the home environment and conduct of the parent prior to the removal of the child. (citation omitted). No single factor is controlling. Abandonment inquiries are heavily fact-oriented, so the courts may consider any fact that assists in deciding whether the parent's conduct demonstrates a conscious or willful disregard of all of his or her parental duties. (citation omitted).

> *Id*. at 187.

*Wilson,* at *2 - *3.

The Taylors also assert that Father's conduct showed a wanton disregard for the welfare of the child, and liken the facts of the instant case to the facts found in *In re Shipley*, 1997 WL 596281, No. 03A01-9611-JV-00369 (Tenn. Ct. App. Sept. 29, 1997) where the trial court terminated the parental rights of the father. On appeal, the trial court was affirmed with regard to its finding of clear and convincing evidence of "wanton disregard for the welfare of [his] child[ren]" *Id* at **4, prior to incarceration stating:

> There was compelling evidence that prior to his incarceration, Father had a drug and alcohol problem. In fact, Father admitted that it was this problem that led to his violent conduct toward his former wife--the mother of these children--which in turn prompted the trial court to place the children with the State in 1992. There was also evidence that while undergoing counseling for his drug and alcohol addiction or abuse, he was still using these substances. His counselor recommended inpatient treatment when he reported to her in the late winter of 1994 that he had passed out from drinking the night before. He failed drug screens in July, 1993, May, 1994, and September, 1994. In the year before his incarceration, he resisted the suggestion that he attend meetings of Alcoholics Anonymous. His drug and alcohol counselor closed his case in December, 1994, concluding that he was just "going through the motions."

The record even contains evidence from which one could reasonably conclude that Father was still using drugs and abusing alcohol in prison. When interviewed there on about January 25, 1996, Father was evasive about the subject. In response to the interviewer's comment--that, of course, he wasn't using these substances in prison--he said, "Well, who says I don't."

By his own admission, Father has engaged in criminal conduct to the extent that he now finds himself in prison for the third time. His most recent criminal activity took place while he supposedly was trying to put his life in order so that he could again have the care and custody of his children. This, coupled with his drug and alcohol problems, is very significant evidence that all of the conditions for termination set forth in T.C.A. § 36-1-113(g)(3)(A)(i)-(iii) were shown in this case. All of this conduct also shows "a wanton disregard for the welfare of [his] child[ren]" prior to his incarceration. *See* T.C.A. § 36-1-102(1)(A)(iv).

*In re Shipley*, at **5.

Evidence of Father's conduct does not display the level of culpability and repeated failure to avoid abuse of drugs and alcohol that evidence in the *Shipley* case reveals concerning that father's conduct. Also, there was not a clear and convincing showing of "a conscious disregard or indifference to the parental obligations." *Koivu v. Irwin,* 721 S.W.2d at 807. We think that there exists "serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence," *see O'Daniel v. Messier,* 905 S.W.2d at 188. We cannot say from our review of the record that the evidence preponderates against the trial court's finding that there was not an abandonment by Father within the meaning of the statute.

As to the second issue, the trial court decided the case prior to the release of *In Re: Swanson*, 2 S.W.3d 180 (Tenn. 1999). The evidence does not preponderate against the trial court's finding of no abandonment under the statutory definition declared unconstitutional by *Swanson*. Such a finding by the trial court must necessarily include a finding that there was no intent on the part of Father to not provide support. We fail to see how the Taylors were prejudiced by the proceeding guided by the pre-*Swanson* definition. This issue is without merit.

This Court, like the trial court, could not take the second step in the process to determine whether the termination of the parental rights would be in the best interest of the child. From the record, it would appear that the child would be given a warm, friendly, and loving home and adequately cared for by the Taylors. This is not to say that the same circumstances could not exist with Father. However, that is an unknown at this time. Therefore, before a change of custody is made, this case should be remanded to the trial court for further proceedings to determine whether

a change of custody at this time would be harmful to the child and, if necessary, to provide for a plan for the child's return to Father that would minimize any harm to the child in the transfer.

The judgment of the trial court is affirmed, and the case is remanded to the trial court for further proceedings consistent with this Opinion. Costs of the appeal are assessed against the appellants, Ronald Eugene Taylor and Rita Cheryl Taylor.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.