IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Submitted on Briefs February 25, 2011

**IN THE MATTER OF JASON C.H. ET AL.**

**Appeal from the Circuit Court for Robertson County**
**No. 74CC1-2009-CV-577     Ross H. Hicks, Judge**

_____

**No. M2010-02129-COA-R3-PT - Filed March 16, 2011**

_____

Father appeals the termination of his parental rights. The trial court found the Department of Children's Services proved the grounds of abandonment and substantial noncompliance with the requirements of the permanency plan and that the termination of Father's parental rights was in the best interest of the child. Father appeals. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Joe R. (Jay) Johnson II, Springfield, Tennessee, for the appellant, Robert B.

Robert E. Cooper, Jr., Attorney General and Reporter; Joe Whalen, Associate Solicitor General; and Dianne Stamey Dycus, Deputy Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

Robert B. appeals the termination of his parental rights to his daughter, Allison B., born on November 12, 2007. This action initially pertained to the welfare of three minor children, Jason C. H., Allison B., and Ava B. The children are half-siblings, as they have the same mother, Tabitha H. R. H., but different fathers. Robert B., the only appellant, is the biological father of Allison; he is not the father of the other two children.[1]

_____

[1]Father contended he was also the biological father of Allison's sister Ava B.; however, DNA testing excluded Father as the biological father. The facts of this case require some discussion of the other two children and their mother, but our analysis will focus primarily on Robert B. and his child Allison B.

The welfare of Allison and her two half-siblings first came to the attention of the Department of Children's Services ("the Department") in September 2008, when the maternal grandmother called the Department expressing concern due to the failure of the children's mother, Tabitha H. R. H., to properly care for them. The children were soon removed from Mother's home with the agreement of Mother, who admitted to a drug problem. The children were placed in the care of the maternal grandparents.

The Department filed a petition on December 22, 2008, to adjudicate the children dependent and neglected; an order granting the petition was entered on March 26, 2009. Prior to the entry of this order, in January 2009, the maternal grandparents informed the Department that they could no longer care for the children, and the children were placed in the custody of the Department in February 2009 and in foster care.

On February 18, 2009, the Department developed the first parenting plans for the children. The goal of the plan for Allison was to return her to her parents, Robert B. ("Father") and Tabitha H. R. H. ("Mother"). The plan required Father to remain drug free, submit to random drug screens, complete a clinical assessment with an alcohol and drug component and follow any resulting recommendations, and cooperate with the Department to establish paternity. Father received a copy and was present at the June 18, 2009 court hearing when the plan was ratified; however, Father did not sign the plan.

Father completed the DNA testing requested by the Department, which confirmed that he was the biological father of one of the children, the child at issue in this action.[2] Father also completed a clinical assessment with an alcohol and drug component in April 2009. Father was randomly drug tested three times. He had a positive screen on March 26, 2009, for benzodiazepines, however, Father had a prescription for this medication. A second drug screen on May 12, 2009, was deemed positive when Father left before submitting to the test. A third drug screen performed on June 18, 2009, was positive for THC.

In September 2009, Father was incarcerated for two charges of driving on a suspended license and was not released until January 1, 2010.[3]

---

[2] Two DNA tests were administered because Father insisted the first test, which determined he was the biological father of Allison but not Ava, was incorrect. The second DNA test again established that he was not the father of Ava and an order, entered on April 1, 2010, established Father's paternity of Allison but not Ava.

[3] Father's detention may have been extended due to his criminal record; he had been convicted and incarcerated on felony theft charges and for violation of probation on federal drug charges.

The Department filed a petition on December 17, 2009, to terminate Father's parental rights to Allison on two grounds, abandonment by an incarcerated parent and substantial noncompliance with the requirements of the permanency plan.[4] On the same day, the Department developed a second parenting plan with the alternate goal of adoption in addition to reunification. Under the revised plan, Father was required to establish paternity, complete a parenting assessment with an alcohol and drug component, follow the recommendations from his clinical assessment, which were a psychological evaluation (with mental health and medication evaluation), intensive substance abuse counseling and education, and attendance at Narcotics Anonymous meetings with proof of attendance provided to the Department. Father was also required to attend all court hearings, appointments, Foster Care Review Board meetings, and Child and Family Team meetings; maintain a safe and drug-free home and not reside with anyone with drug issues; maintain employment and be able to financially provide for the children; provide the Department proof of monthly employment; and abide by a court order on child support once legitimated as the child's father, and until such court order, buy any needed items for the child and provide receipts. Father did not participate in the development of this plan, and did not sign it because he wished to consult with an attorney first. However, Father was aware of the requirements.

A hearing on the petition for termination of parental rights was held on July 7, 2010. The Department presented the testimony of several witnesses including Sondra Fox, Jane Hickman, the maternal grandparents, and the foster parent. Sondra Fox, the Department's caseworker, who began working with the family in January 2009, stated that she attempted to help Father by arranging for the random drug tests, helping to provide the clinical assessment with an alcohol and drug assessment, providing notices of meetings and court hearings, and attempting to maintain contact with Father. While Father was incarcerated, Ms. Fox mailed him notices of court hearings and arranged for drug classes. Ms. Fox stated that while she did not visit Father during his incarceration, another Department worker visited him. However, upon Father's release from incarceration, the Department was unable to make contact with Father, and Ms. Fox stated that Father did not contact the Department or provide his new address. Ms. Fox stated the last time she had contact with Father was in June of 2009.

Jane Hickman, a CASA worker, testified that she had visited the residences of Father and none of them were suitable or safe for a child to reside. Ms. Hickman also testified that following Father's release from incarceration she attempted, but was unable, to contact Father and that her last contact with him was July 2009.

---

[4]Mother was also named as a defendant. Mother's rights were terminated as to Allison and the other children. Mother did not appeal the termination of her parental rights; thus, we shall not discuss the plans or other facts and proceedings that pertained only to Mother.

Both maternal grandparents testified. The grandfather testified that he was not supportive of his daughter's relationship with Father; this was due to Father's drug use and because Father had stolen from him, for which Father was convicted of a felony theft and incarcerated. Due to the problems between them, Father was prohibited from visiting or contacting the child while in the maternal grandparent's care. The maternal grandmother also testified to the strained relationship caused by Father's drug use and theft; although she admitted that she would occasionally allow Father to speak to Allison at the end of the driveway without her husband's knowledge. Both grandparents stated that they believed that termination of Father's parental rights and adoption by the foster parent was in Allison's best interest.

The Department also presented the testimony of the foster parent,[5] who testified that she wished to adopt Allison and her two half-siblings. She stated that all three children had improved since coming into her care, especially Allison who has cerebral palsy and needs special care and attention.

At the time of the hearing, Father was once again incarcerated, this time for failure to appear in court on the pending charges for driving on a suspended license. Nevertheless, Father was permitted to attend the hearing and testified. He stated he had not been involved in the development of either permanency plan, but admitted that he was aware of the requirements of both plans. He testified that following his release from jail in January 2010, he stopped by the Department office to talk to Ms. Fox, but she was not in the office and, thereafter, he made no attempts to contact the Department, tell them where he was living or arrange visitation with his child. He stated that he lived briefly in an apartment, then moved into his mother's residence, and at the time of the hearing he resided in Franklin, Kentucky, at a residence Father admitted was not suitable for a child. Father further testified that he maintained steady employment when not incarcerated, working as a roofer earning between $1,000 to $1,500 a month; nevertheless, he admitted not paying any support for the child. Father stated that he had completed his clinical assessment and stated he was attending Celebrate Recovery. Father stated his last contact with his child was in July 2009 when the DNA testing was performed, however, Father had sent letters to the child while incarcerated.

The trial court took the case under advisement at the conclusion of the trial. On September 14, 2010, a final judgment was entered in which the court found the Department had proven two grounds, abandonment by an incarcerated parent and substantial noncompliance with the requirements of the permanency plan, and that termination of Father's parental rights was in the child's best interest. Father filed a timely appeal.

---

[5]The foster parent is Allison's step-aunt.

ANALYSIS

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993). This right is superior to the claims of other persons and the government, yet it is not absolute. *In re S.L.A.*, 223 S.W.3d 295, 299 (Tenn. Ct. App. 2006).

Parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). The petitioner has the burden of proving that there exists a statutory ground for termination, such as abandonment or failing to remedy persistent conditions that led to the removal of the child. *See* Tenn. Code Ann. § 36-1-113(c)(1); . Only one ground need be proved, so long as that ground is proved by clear and convincing evidence. *See In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). In addition to proving one of the grounds for termination, the petitioner must prove that termination of parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re F.R.R.*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re A.W.*, 114 S.W.3d 541, 544 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000) (holding a court may terminate a parent's parental rights if it finds by clear and convincing evidence that one of the statutory grounds for termination of parental rights has been established and that the termination of such rights is in the best interests of the child). Therefore, a court may terminate a person's parental rights if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is clearly and convincingly established that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c)(1)-(2); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Whether a statutory ground has been proved by the requisite standard of evidence is a question of law to be reviewed de novo with no presumption of correctness. *In re B.T.*, No. M2007-01607-COA-R3-PT, 2008 WL 276012, at *2 (Tenn. Ct. App. Jan. 31, 2008) (no Tenn. R. App. P. 11 application filed) (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810).

I.
GROUNDS FOR TERMINATION

The trial court found the Department had proven two grounds for termination of Father's parental rights to Allison. Father does not challenge the grounds for termination on appeal; however, we have a duty to examine whether the evidence in the record is sufficient to prove at least one of the grounds by clear and convincing evidence.

A.

ABANDONMENT BY AN INCARCERATED PARENT

Tenn. Code Ann. § 36-1-102(1)(A)(iv) provides a ground of abandonment when:

A parent . . . is incarcerated at the time of the institution of an action . . . to declare a child to be an abandoned child, or the parent . . . has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has *willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child* for four (4) consecutive months immediately preceding such parent's . . . incarceration, or the parent or guardian has *engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.*

(Emphasis added). Father was incarcerated at the time of the filing of the petition in December 2009, and had been incarcerated since August 2009; thus, the applicable period of review is April 2009 to August 2009. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv).

1.    Willfully Failing to Make Reasonable Payments to Support Allison

In the four months prior to his incarceration, Father was employed but he made no efforts to pay any support on behalf of the child. Father testified that he had consistently worked as a roofer for the past eighteen years when he was not in jail and, although Father was not under a court order to pay support, Father admitted at trial that he was aware of his obligation to support his child,[6] however, he did not pay support because he was not under a court-ordered specified amount. "Failure of a parent to pay support under the termination statutes is 'willful' if the parent 'is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support.'" *State of Tenn., Dep't of Children's Serv. v. Culbertson*, 152 S.W.3d 513, 524 (Tenn. Ct. App. 2004) (citing *In re Adoption of Muir,* No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)). Moreover, under Tennessee law, "the obligation of support exists even in the absence of a court order to do so." *Id.* at 523-24 (citing *In re Gordon (Webb v. Wilson)*, 980 S.W.2d 372, 373-78 (Tenn. Ct. App. 1998); *State v. Manier,* No. 01A01-9703-JV-00116, 1997 WL 675209, at *5 (Tenn. Ct. App. Oct. 31, 1997)).

---

[6]Further, our legislature recently amended Tenn. Code Ann. § 36-1-102, which now states "[e]very parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children."

2.  Conduct Demonstrating a Wanton Disregard For the Child's Welfare

Father engaged in conduct that demonstrated a wanton disregard for the welfare of his child by his continued drug use, criminal behavior, and repeated incarceration. Father engaged in the use and abuse of illegal drugs for several years. His continuous drug abuse was testified to by several witnesses. Moreover, it was proven that Father continued to abuse drugs even after the Department attempted to assist him based upon a positive drug test on June 18, 2009 for THC (marijuana), and by a second test that was deemed positive in May 2009 when Father left before the test could be performed. Father also had a history of repeated incarcerations.[7] "[P]robation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d 838, 867 (Tenn. Ct. App. 2005) (citing *State Dep't of Children's Servs. v. J.M.F.,* No. E2003-03081-COA-R3-PT, 2005 WL 94465, at *7-8 (Tenn. Ct. App. Jan.11, 2005); *In re C. LaC.*, No. M2003-02164-COA-R3-PT, 2004 WL 533937, at *7 (Tenn. Ct. App. Mar.17, 2004); *In re C.T.S.*, 156 S.W.3d 18, 25 (Tenn. Ct. App. 2004); *In re C.W.W.*, 37 S.W.3d at 474-75).

The evidence in the record clearly and convincingly proved that Father was aware of his duty to support Allison, he had the capacity to provide support, and yet he made no attempt to provide support for Alison during the requisite period. Moreover, the evidence in the record also clearly and convincingly proved that Father engaged in conduct that demonstrated a wanton disregard for the welfare of his child by his continued drug use, criminal behavior, and repeated incarcerations.

Accordingly, we affirm the trial court's findings that the Department proved by clear and convincing evidence the ground of abandonment under Tenn. Code Ann. § 36-6-102(1)(A)(iv).

B.
SUBSTANTIAL NONCOMPLIANCE WITH THE PERMANENCY PLAN

A parent's rights may be terminated upon clear and convincing evidence that the parent was in "substantial noncompliance . . . with the statement of responsibilities in a permanency plan." Tennessee Code Annotated § 36-1-113(g)(2). The issue of substantial noncompliance with the requirements of a permanency plan is a question of law, and,

---

[7]A trial court may consider behavior prior to the four months immediately preceding a parent's incarceration in finding that the parent engaged in pre-incarceration conduct that exhibited a wanton disregard for the welfare of the child. *See In re Audrey S.*, 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005).

therefore this court reviews it de novo with no presumption of correctness. *In re Valentine*, 79 S.W.3d at 548.

Allison was initially placed in the care of the Department due to Mother's drug use and her inability to provide a suitable home for the child and her siblings. At the time of this placement, Mother was in a relationship with Father, who also had a serious drug problem. Under the permanency plan, Father was required to establish paternity, submit to random drug screenings, complete a clinical assessment with an alcohol and drug component, and follow the recommendations arising from the clinical assessment, which were to have a psychological evaluation, attend intensive substance abuse counseling and education, and attend Narcotics Anonymous meetings. Father was also required to attend all court hearings, appointments, Foster Care Review Board meetings, and Child and Family Team meetings; maintain a safe and drug-free home; maintain employment and be able to provide financial support for the child; provide the Department with proof of monthly employment; and abide by a court order regarding child support, and until such order was entered, provide any needed items for the child and provide receipts to the Department.

The terms of the permanency plan must be "reasonable and related to the remedying the conditions which necessitate foster care placement." *In re Valentine*, 79 S.W.3d at 547 (quoting Tenn. Code Ann. § 37-2-403(a)(2)(C)). We find that these requirements were clearly reasonable and were directly related to the reasons for Allison's removal in that the requirements were aimed at helping Father overcome his drug problem, and provide support and a safe home for her. Thus, we must now determine whether the Department exerted reasonable efforts to assist Father to achieve the stated goals and, if so, whether Father reasonably complied with the requirements of the permanency plan.

The Department submitted an affidavit of reasonable efforts that satisfied the requirements of Tenn. Code Ann. § 37-1-166(c) to establish the reasonableness of the Department's efforts by clear and convincing evidence. *See In re Giorgianna H.*, 205 S.W.3d 508, 518 n.22 (Tenn. Ct. App. 2006); *In re C.M.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *8 (Tenn. Ct. App. Mar. 9, 2004)."Unless a parent asserts that the Department's efforts were not reasonable, the Department is not required to present additional evidence regarding its remedial efforts." *See In re C.M.M.*, 2004 WL 438326, at *8. Father did not contest the reasonableness of the Department's efforts to assist him; thus, the reasonableness of the Department's efforts as stated in the affidavit were not in dispute. Nevertheless, the Department called Ms. Fox as a witness to testify about her efforts to assist Father. She stated she arranged for the clinical assessment and drug classes while Father was incarcerated and that she arranged the random drug screenings. Ms. Fox also stated that she attempted to keep Father informed of all hearings and meetings related to the child but she had great difficulty in helping Father due to his repeated incarcerations and the inability to

stay in contact with Father. Moreover, Father admitted that after his release from incarceration in January of 2010 that he made no effort to stay in contact with the Department, he did not notify the Department where he was living, and he did not request visitation or seek to speak with Allison.

The road to reunification of parent and child is a "two-way street," and the Department is not required to exercise "herculean efforts." *In re Tiffany B.*, 228 S.W.3d 148, 159 (Tenn. Ct. App. 2007); *In re Giorgianna H.*, 205 S.W.3d at 519. A parent desiring to be reunited with his child has a corresponding duty to "make reasonable and appropriate efforts to rehabilitate themselves and to remedy the conditions that required the Department to remove" their child from custody. *In re Giorgianna H.*, 205 S.W.3d at 519. The record proves that the Department exercised reasonable efforts to assist Father in achieving the goals of the permanency plan; the record also proves that Father failed to satisfy his corresponding duty to rehabilitate himself and to remedy the conditions that led to Allison's removal.

We, therefore, affirm the trial court's finding that the Department presented clear and convincing evidence that Father failed to substantially comply with the requirements of the permanency plan by, *inter alia*, failing to complete the recommendations regarding his drug abuse, failing to stay in contact with the Department, and failing to provide a suitable home for Allison.

We now turn our attention to the only issue Father raised in his appeal, whether it is in Allison's best interest that his parental rights be terminated.

II.

BEST INTERESTS OF THE CHILD

The Tennessee General Assembly provided a list of factors that may be considered when the court conducts the best interest analysis. *See* Tenn. Code Ann. § 36-1-113(i)(1)-(9). The nine statutory factors, which are well known and need not be repeated here, are not exclusive or exhaustive, and other factors may be considered by the court. *See In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Moreover, not every statutory factor need apply for the court to determine that termination is in the child's best interest; a finding of but a few significant factors may be sufficient to justify a finding that it is in the child's best interest that the parent-child relationship be terminated. *See In re M.A.R.*, 183 S.W.3d at 667. Further, the best interest analysis is to be determined from the perspective of the child rather than the parent. *See State of Tenn., Dep't of Children's Serv. v. L.H.*, No. M2007-00170-COA-R3-PT, 2007 WL 2471500, at *7 (Tenn. Ct. App. Dec. 3, 2007) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

In this case, the evidence clearly and convincingly established that Father continued his illegal drug use, he was again incarcerated after the petition was filed, he did not financially support his daughter, he had no meaningful relationship with her, and he did not have the present ability to provide a suitable home for her. Moreover, Father repeatedly failed to make any adjustments to become a responsible parent and, as the trial court found, Allison is a special needs child who has established a strong bond with her foster parent, and the foster parent wished to adopt her along with her siblings.

Considering the relevant factors from the perspective of Allison's best interest, rather than Father's interest, it has been proven by clear and convincing evidence that it is in Allison's best interest that Father's parental rights be terminated.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Appellant.

_____
FRANK G. CLEMENT, JR., JUDGE

-10-