IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 9, 2012

**IN RE: WESTON T. R.**

**Appeal from the Juvenile Court for Davidson County**
**No. 139621     Betty Adams Green, Judge**

**No. M2012-00580-COA-R3-PT - Filed August 31, 2012**

Father has a son who was placed in the custody of his maternal grandmother when he was ten months old because Mother was deceased and Father was incarcerated. Grandmother filed a petition for termination of Father's parental rights. Following a hearing the trial court determined Father had abandoned his child as that term is defined by Tenn. Code Ann. §36-1-102(1)(A)(iv) and that it was in the child's best interests for Father's parental rights to be terminated. Father has been incarcerated for all but five months of the child's life and has engaged in conduct that exhibits his wanton disregard for his son's welfare. The child has no meaningful relationship with Father due to Father's life choices, which have resulted in repeated arrests and periods of incarceration. We agree with the trial court that Father has abandoned his child and that it is in the child's best interest for Father's parental rights to be terminated. We therefore affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT and ANDY D. BENNETT, JJ., joined.

David Ryan Grimmett, Nashville, Tennessee, for the appellant, J.W.W.

Joel Stephen Mills, Nashville, Tennessee, for the appellee, L.A.R.

**OPINION**

**I. BACKGROUND**

Weston T.R. ("Weston" or "Child") was born to S.F.R.[1] ("Mother") in March 2010. Mother was unmarried and the father, J.W.W. ("Father"), was incarcerated due to a conviction for aggravated assault. Father was put on probation and released from jail in June 2010 and lived with Mother and Weston from the time of his release until September 2010, when he was arrested for underage drinking. Father was returned to jail for violating his probation terms and was not released until three months later, in December 2010. Father was arrested again in early January 2011 on charges that were later dismissed. Father was released ten days later but was returned to jail at the end of January 2011 for another probation violation. Father was still incarcerated at the time of trial, which was September 14, 2011. Father testified that he did not know when he would be released. Weston was eighteen months old at the time of trial, and Father had been incarcerated for all but about five months of his son's life.

Mother passed away in November 2010 while Father was in jail. Child was placed temporarily with Mother's sister. Mother's sister was unable to obtain medical insurance for Child, whose ears then needed medical attention, and so Mother's sister asked Mother's mother, L.A.R. ("Grandmother"), to care for Child beginning in January 2011. Grandmother filed a Petition to Terminate Parental Rights and Legal Guardianship in early March 2011. She was granted legal custody of Weston in April 2011. Weston has lived with Grandmother continuously from January 2011.

## II. TRIAL COURT PROCEEDINGS

At the trial to determine whether Father's parental rights should be terminated, Father and Grandmother both testified. Father was asked about Weston's care when Father was out of prison and living with Mother and Weston. Father admitted to being a drug addict and to using the following drugs between June and September 2010, while he was living with Mother and Weston: Oxycontin, Xanax, cocaine, crack, marijuana, Lortab, and Soma. Father testified that he was on probation between June and September 2010, and that he knew taking these illegal drugs was a violation of his probation which could result in another arrest and return to jail. When asked whether he thought about the effect on Weston if he was returned to jail, Father testified that he did not think about any effect on Weston when he decided to use the drugs. He testified as follows:

Q: And you were still on probation at that time, correct?

A: Yes, sir.

----

[1]To protect the child's identity, the parents' initials will be used throughout this opinion.

Q:     And you knew that that was a violation of your probation; is that right?

A:     Yes, sir.

Q:     And did you consider what would happen if you got caught using drugs?

A:     Yes.

Q:     And you knew that you'd be violated and go back to jail, right?

A:     Yes.

Q:     And you did it anyway?

A:     Yes.

Q:     Did you consider the effect that that might have on Weston, if you went back to jail?

A:     I did.  Not actually. I didn't think about that.

Q:     You didn't think about that?

A:     No.

Q:     So you weren't thinking about Weston at all during that time?

A:     I was thinking about Weston, but I wasn't thinking about my actions.

Q:     What impact do you think that it has on Weston, that you went back to jail?

A:     It had a big impact.  [Mother] didn't know how to take care of him.

Father acknowledged that he had an anger management problem and admitted to hitting Mother while Weston was present.  Father testified that he did not think Mother knew how to take care of Weston and that he was a better parent than Mother was.  Father acknowledged Weston was doing well in his placement with Grandmother.

Grandmother testified that she lives in Wyoming and has been taking care of Weston since January 2011, when Mother's biological sister asked for help in caring for Weston. Grandmother testified that Father has not written or phoned to check on Weston since she has had Weston in her care.[2] The evidence showed that Grandmother has provided Weston with the medical care he has needed and that Weston has thrived since he has been in her care.

In its Order issued on February 14, 2012, the trial court made the following findings of fact:

13. [Father] is a convicted felon and by his own admission, has been incarcerated for much of Child's life. He admitted to physically assaulting the Mother with Child present. He admitted that he used illegal drugs and alcohol while on probation and knew that it was a violation of his probation and could result in his being incarcerated again.

14. [Father] admitted to knowingly violating his probation and his incarceration was directly related to his knowing violation.

15. [Grandmother] has provided for Child's care for most of the time since the Mother's death even providing support for Child while Child was not living with her. [Father] has provided little, if any, financial support of Child during Child's lifetime.

16. [Grandmother] is currently providing all support for Child including medical insurance. It was uncontroverted that Child is thriving and doing well in [Grandmother's] home.

17. [Father] has very little if any relationship with Child at this time. He has lived with Child for only a few months and has not visited with Child since December 2010.

18. [Father] by his own admission does not know when he will be in a position to act as a parent and custodian of Child. He acknowledged that his Child is being well cared for by [Grandmother]

---

[2]Father testified he asked his mother to call Grandmother to check on Weston, and Grandmother testified that Father's mother has phoned a handful of times.

19. [Father] has never gone a four month period without being incarcerated so there is not a four month period for which he has had the ability to support Child.

20. Regardless, [Father] has exhibited a wanton disregard for the welfare of [Child] by willingly and knowingly engaging in behavior that caused him to be incarcerated and placed [Father] in a position that prevents him from caring for his child.

Then, after citing Tenn. Code Ann. §36-1-102(1A)(iv), one of the statutory definitions of "abandonment," the court made the following conclusions of law:

23. [Father], who is incarcerated and was so at the filing of this petition, has abandoned Child by exhibiting a wanton disregard for the welfare of Child by engaging in behavior that has caused [Father] to be incarcerated and unable to act as a custodian for Child. [Father] was aware that he was subject to being returned to prison and knew that his conduct would likely cause him to return to incarceration but he exhibited wanton disregard for his child by engaging in criminal activity anyway. As such, he was in a position that he was unable to provide care for his child and Child was left to the care of the Petitioner and others.

24. The Court has considered the factors codified in T.C.A. 36-1-113(i) and finds by clear and convincing evidence that it is in the best interest of Weston that the parental rights of [Father] be terminated. [Father] is still incarcerated and cannot have Weston in his home and does not know when he will be in position to assume custody. He has only visited with Child one time in the nearly 10 months prior to this trial. He has no meaningful relationship with Child. [Father] admitted to physically harming [Mother] with Child present. Weston is doing well in his current home and even [Father] admitted that he could not say that Child was not being properly cared for in [Grandmother's] home. [Grandmother] testified that she was seeing to Child's medical needs and had him on her insurance plan which was a step up because Weston was not able to obtain health insurance in Tennessee prior to being placed in her custody. [Father] did not pay child support for Child even when he was not incarcerated.

26. Therefore, it is hereby ORDERED, ADJUDGED and DECREED that

the parental rights of [Father] are terminated pursuant to T.C.A. 36-1-113 and 36-1-102.

27.   It is in the best interest of Weston [T.R.] that the parental rights of [Father] are terminated.

Father appeals the trial court's determination that he abandoned Weston and that it is in Weston's best interest that Father's parental rights be terminated.

## III. STANDARDS FOR TERMINATING PARENTAL RIGHTS

Our legislature has identified those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth the grounds upon which termination proceedings can be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113©); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

A person seeking to terminate another's parental rights must prove two things. Tennessee Code Annotated § 36-1-113(c) requires that termination of parental rights must be based upon a finding by the court by clear and convincing evidence (1) that the grounds for termination of parental rights have been established; and (2) that termination of the parent's rights is in the child's best interests.

Both grounds and best interests must be proved by clear and convincing evidence. *In re Angela E.*, 303 S.W.3d at 250 ; *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). This heightened burden of proof is one of the safeguards required because of the fundamental rights involved, and its purpose is to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *In re Angela E.*, 303 S.W.3d at 250; *In re M.W.A.*, 980 S.W.2d at 622.

Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d at 861, and eliminates any serious or substantial doubt about the correctness of these factual findings. *In re Valentine*, 79 S.W.3d at 546; *State, Dep't of Children's Servs. v. Mims (In re N.B.)*, 285 S.W.3d 435, 447 (Tenn. Ct. App.2008).

*In re Bernard T.*, 319 S.W.3d at 596.

In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

The party seeking termination must establish the existence of only one statutory ground to support a termination. *In re Angela E.*, 303 S.W.3d at 251; *In re Valentine*, 79 S.W.3d at 546. Only if at least one ground is established by clear and convincing evidence does the trial court or the reviewing court conduct a best interests analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d at 254. As we have stated before, the existence of a ground does not inexorably lead to the conclusion that termination of a parent's rights is in a child's best interest. *In re C.B.W.*, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006).

Statutory factors are set out for the best interests analysis that the court "shall consider," but that analysis is not limited to the factors enumerated in the statute. Tenn. Code Ann. § 36–1–113(I); *In re Angela E.*, 303 S.W.3d at 251; *In re Audrey S.*, 182 S.W.3d at 878. Every factor need not be applicable for the trial court to determine that it is in the best interest of Child for a parent's right to be terminated. The relevance and weight to be given each factor depends on the unique facts of each case. In some cases one factor alone may be sufficient to determine the outcome. *In Re Audrey S.*, 182 S.W.3d at 878.

Appellate courts review the trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Thus, reviewing courts will review the trial court's findings of fact *de novo* on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In the Matter of M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re A.M.H.*, 215 S.W.3d 793, 809 (Tenn.2007).

In light of the heightened burden of proof in termination proceedings, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements necessary to terminate a parent's rights. *In re Bernard T.*, 319 S.W.3d at 597. A reviewing court must review "the trial court's ruling that the facts of [a] case sufficiently support the termination ground. . . ," a conclusion of law, *de novo*, with no presumption of correctness. *In the Matter of M.L.P.*, 281 S.W.3d at 393

(quoting *In re A.M.H.*, 215 S.W.3d at 810). As in all other cases, questions of law, including issues of statutory interpretation, are reviewed *de novo* with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246; *Adoption of A.M.H.*, 215 S.W.3d at 809.

## IV. ABANDONMENT

Tennessee Code Annotated section 36-1-113(g) lists ten statutory grounds for terminating a parent's rights. As discussed above, only one ground is necessary to support an order terminating parental rights where termination is in the best interests of the child. Tenn. Code Ann. §36-1-113(c) and (g); *In re Audrey S.*, 182 S.W.3d at 862.

"Abandonment" is included as a statutory ground for terminating a parent's rights, and the trial court relied on the definition of abandonment found in section 36-1-102(1)(A)(iv), which provides:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of Child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of Child.

Two distinct requirements that must be met before Father can be found to have abandoned his child pursuant to this section. First, Father must have been incarcerated either when the termination proceeding was filed or during all or part of the four months immediately preceding the filing of the termination proceeding. Grandmother filed her Petition to Terminate Parental Rights on March 9, 2011. Father was incarcerated on that date, so the first requirement of section 36-1-102(1)(A)(iv) is satisfied.

With regard to the second part of the statute[3], the trial court found that Father's conduct prior to his incarceration exhibited a wanton disregard for Weston's welfare. *See In re Audrey S.*, 182 S.W.3d at 865 (discussion of requirements of section 36-1-

---

[3] With regard to the statute addressing a parent's failure to support or visit, the trial court found that Father has never gone a four month period without being incarcerated since Weston's birth, so there is not a four month period for which he has had the ability to support Child. He obviously had no opportunity to visit during those periods.

102(1)(A)(iv)). Father contests this finding, arguing the evidence does not show he wantonly disregarded the welfare of his child.

Father explains that he was arrested for aggravated assault in June 2009, before he learned Mother was pregnant with Weston. Father contends he could not wantonly disregard the welfare of a child he did not even know existed. We agree with Father on this point. However, while the record shows that when Father was released from jail in June 2010 he was on probation for charges that predated Father's knowledge of Mother's pregnancy,[4] Father's probation violations and conduct that resulted in his return to jail throughout Weston's young life occurred after Weston was born. Father admitted that he has an anger management problem and that he hit Mother between June and September 2010 while Weston was in the room "because she was pushing [his] buttons." Mother was upset enough as a result of Father's hitting her that she phoned her mother, who was in Wyoming at the time. Grandmother was concerned enough as a result of Mother's phone call that she, in turn, called the police, who went out to Father and Mother's home to investigate. Although Father testified he was not arrested for domestic assault as a result of that incident, Father was arrested for underage drinking. Father testified he knew that drinking alcohol was a violation of his probation and that if he were caught drinking alcohol he would be returned to jail.

Father also testified that he was a drug addict and that while he was out of jail between June and September 2010 he took the drugs Oxycontin, Xanax, cocaine, crack, marijuana, Lortab, and Soma. Father testified that he used these drugs while Weston was in the home and that he knew using these drugs constituted a violation of his probation that could lead to another arrest and return to jail.

In concluding that Father exhibited wanton disregard for Weston's welfare, the trial court wrote that Father "has engag[ed] in behavior that has caused [Father] to be incarcerated and unable to act as a custodian for Child. [Father] was aware that he was subject to being returned to prison and knew that his conduct would likely cause him to return to incarceration but he exhibited wanton disregard for his child by engaging in criminal activity anyway." Contrary to Father's suggestion, the trial court relied on conduct Father engaged in during Weston's life that evidenced his wanton disregard for Weston's welfare. The court did not focus on Father's convictions that predated Weston's birth.

This Court has addressed the correlation between a parent's incarceration and his or her wanton disregard for his or her child in prior cases:

---

[4]Father testified that when he was convicted of aggravated assault in June 2009, he was already on probation for aggravated burglary.

Incarceration severely compromises a parent's ability to perform his or her parental duties. A parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for Child.

*In re Audrey S.*, 182 S.W.3d at 866 (citing James G. Dwyer, *A Taxonomy of Children's Existing Rights in State Decision Making About Their Relationships,* 11 WM. & MARY BILL RTS. J. 845, 958 (2003)). Recognizing that incarceration is not an "infallible predictor of parental unfitness," *In re Audrey S.*, 182 S.W.3d at 866, the court explained that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867-68; *see In re Joseph L.*, 2012 WL 2389609, at *8 (Tenn. Ct. App. June 25, 2012) (court found mother's decision to engage in conduct leading to aggravated assault conviction demonstrated clear and convincing evidence of mother's wanton disregard for child's welfare).; *In re O.J.B.*, 2009 WL 3570901, at *4-5 (Tenn. Ct. App. Nov. 2, 2009) (court found incarcerated mother who used drugs during pregnancy and who engaged in conduct leading to further incarcerations exhibited wanton disregard for child's welfare); *State of Tennessee, Dep't of Children's Servs. v. J.M.F.*, 2005 WL 94465, at *7 (Tenn. Ct. App. Jan. 11, 2005) (incarcerated parent with multiple drug offenses, who wastes opportunities to rehabilitate himself by continuing to abuse drugs, resulting in parole revocations and repeated incarcerations, demonstrates wanton disregard for child's welfare).

Father testified that he plans to go to a rehabilitation center when he gets out of jail to stop his drug use and become a better parent to his child. However, "[i]n parental rights matters, the court does not look to the protestations of affections and expressed intentions of the parent, but rather the parent's course of conduct." *J.M.F.*, 2005 WL 94465, at *7 (quoting *In re DNG*, 2004 WL 2314534, at *2 (Tenn. Ct. App. Oct. 13, 2004) (itself citing *Koivu v. Irwin*, 721 S.W.2d 803 (Tenn. Ct. App.1986) and *Fancher v. Mann*, 432 S.W.2d 63, 65 (Tenn. Ct. App. 1968))).

The trial court did not expressly find "by clear and convincing evidence" that Father abandoned Weston, as required by Tenn. Code Ann. §36-1-113(c)(1), but there was no conflict in the evidence regarding Father's arrests, conduct leading to his arrests, periods of incarceration, or drug use, all of which supported the trial court's conclusion that Father abandoned Weston. Father's belief that Mother did not know how to take care of Weston further supports the trial court's conclusion that Father engaged in conduct that exhibited a wanton disregard for Weston's welfare. Father did not think Mother took good care of Weston, yet this belief did not induce Father to refrain from engaging in conduct he knew

may lead to additional arrests and further incarceration.

The unrefuted evidence presented in this case together with the case law precedent regarding proof necessary to support a finding of abandonment under section 36-1-102(1)(A)(iv) leads us to conclude by clear and convincing evidence that Father abandoned Weston and engaged in conduct prior to his incarcerations in September 2010 and January 2011 that exhibited a wanton disregard for Weston's welfare.

## V. CHILD'S BEST INTERESTS

Having concluded that Father abandoned Weston within the meaning of Tenn. Code Ann. §36-1-102(1)(A)(iv), we must now determine whether the trial court correctly determined that it is in Weston's best interest that Father's parental rights be terminated. A child's best interests must be viewed from the perspective of the child, rather than the perspective of the parent. *In re Audrey S.*, 182 S.W.3d at 878. The General Assembly has provided the courts with a non-exclusive list of nine factors to consider to determine whether terminating a parent's rights is in the best interest of a child.[5] Tenn. Code Ann. §36-1-113(i); *In re Audrey S.*, 182 S.W.3d at 878. A court need not consider each factor listed; depending

---

[5]The factors are:

(1)Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to §36-5-101.

on the circumstances of each case, "the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878.

In addressing Weston's best interest, the trial court found by clear and convincing evidence that it is in Weston's best interest that Father's parental rights be terminated. As the trial court found nearly all of the statutory factors weigh in favor of terminating Father's parental rights. Weston has spent only about five months of his life with Father, and that was before he had even reached his first birthday. No evidence was presented suggesting Weston and Father have developed a meaningful relationship. Father is not in a position to care for Weston, and the evidence showed that Father has never provided Weston with a stable environment.

Father contends it is not in Weston's best interest to terminate his parental rights, arguing he has been thwarted in his attempts to see his son. Father explains that when he tried to see Weston after getting out of jail in December 2010, Mother's sister, who was granted temporary custody after Mother died, would not allow Father to see Weston other than on Christmas Day. Father testified he was only out of jail from December 13, 2010 until January 9, 2011, and then again from January 19 to January 25, 2011. Even if Father were able to visit Weston every day he was not incarcerated in December 2010 and January 2011, we do not believe Father could have developed a meaningful relationship with Weston.

Father also suggests Grandmother's "actions prevented [him] from visiting or forming a meaningful relationship with the child." We do not agree. Grandmother, who lives in Wyoming, was first asked to help out with Weston in January 2011. Grandmother was not contacted until after Mother had died, when Father was unable to care for Weston because he had made life choices that landed him back in jail. Grandmother flew to Tennessee and took Weston with her back to Wyoming, where she obtained medical insurance for Weston and provided him with the medical care he needed at that time. Grandmother is not responsible for Father's decisions that resulted in his being incarcerated for most of his son's life.

Accordingly, we conclude the trial court correctly concluded that Grandmother showed by clear and convincing evidence that terminating Father's parental rights is in Weston's best interest.

## IV. CONCLUSION

The trial court's judgment terminating Father's parental rights is affirmed. Costs of this appeal are assessed against Father, J.W.W.

_____
PATRICIA J. COTTRELL, JUDGE